**GENUSA et al. v. CITY OF HOUSTON et al.**
(No. 9248.)

Court of Civil Appeals of Texas. Galveston.
Oct. 22, 1928.

Rehearing Denied Nov. 15, 1928.

Gordon O. McGehee and R. H. Ward, both of Houston, for appellants.

Sewall Myer, City Atty., and J. H. Painter, Asst. City Atty., both of Houston, for appellees.

LANE, J. By an ordinance of the city of Houston, carriages and hacks used for hire are defined, and after such definition is made it provides that it is unlawful to drive such carriages and hacks in the streets of the city without first procuring a license so to do. It provides that the driver of such vehicles shall be not less than 18 years of age. By section 192 of the ordinance it is provided as follows:

"Sec. 192. *Bond Required for Hacks and Carriages*—The owner of every carriage or hack shall, as a condition precedent to the issuance of a license to run the same, execute a bond for the sum of five hundred dollars, payable to the City of Houston, with good and sufficient sureties, conditioned that the driver of such carriage or hack will faithfully carry and deliver all goods intrusted to him, at the established rates, and will comply with all the ordinances of the city and the general laws of this State concerning public carriages and hacks and other vehicles, which bond shall be approved by the Mayor: Provided, that the owner of more than one such vehicle may give bond in any amount necessary to cover all of his vehicles at said rate; provided, further that when the number of vehicles is more than ten and less than twenty, said bond shall be in the sum of Five Thousand Dollars ($5,000.00), and when made to cover twenty vehicles or more, said bond shall be in the sum of Ten Thousand Dollars ($10,000.00). The said bond may be sued upon in the name of the party injured by a breach thereof, and it shall not be void upon one recovery, but may be sued on from time to time, until the whole amount of the penalty is recovered."

By section 194 the owner of such vehicles is required to procure a license to run the same in the city of Houston and at such time to pay to the city a license fee of $15 for each hack for the current year. By sections 197 and 236 it is provided as follows:

"Sec. 197. *Drivers Must Have License: Provisions*—No person shall drive any hack as defined herein except a person to whom a license therefor has been granted and *such other persons* as may be registered with the approval of the Public Service Commissioner to drive for some person holding a hack license. When the holder of any hack license desires some other person to become a driver of said hack he shall so indicate to the Public Service Commissioner,

who shall require the proposed driver to fill out his application upon a form prescribed by the Public Service Commissioner who may, if in his opinion the application should be granted, register such driver in a book kept by him for that purpose, and thereafter said driver shall be authorized to drive the hack for which he has been registered, but the owner of said hack shall be held jointly liable with the driver thereof for the manner in which said vehicle is driven or operated. Any and all such drivers shall be subject to suspension or removal by the Public Service Commissioner for the same reasons and upon the same conditions as to license as hereinabove specified."

"Sec. 236. *Penalties*—(a) Any person who shall violate any of the provisions of this ordinance shall be guilty of a misdemeanor and upon conviction thereof in any court of competent jurisdiction shall be punished by a fine in any sum not less than Five Dollars ($5.00) nor more than One Hundred Dollars ($100.00), and in addition thereto the Mayor, or Recorder, or Judge of the Corporation Court imposing such fine may suspend or revoke the license held by such person, operator or manager of such vehicles and the license of the driver or chauffeur operating the same.

"(b) In the event that any operator or person holding a license to operate any vehicle in the jitney service in the City of Houston shall be convicted of violating any of the provisions of the traffic ordinances of the City of Houston, or the laws of the State of Texas, or violating any rule, regulation or ordinance of the City of Houston in relation to the jitney business, the Mayor, or Recorder, or Judge of the Corporation Court, may in addition to the imposition of the fine provided for by this ordinance, suspend or revoke the license held by such person, and during the period of such suspension, or after such revocation, it shall be unlawful for any such person so convicted to operate any vehicle in the jitney service unless and until the suspension is removed or a new license is granted, should the same be revoked: Provided, in the case of revocation, no new license shall be granted to an operator or chauffeur until after the expiration of twelve months.

"(c) Cumulative of the penalties heretofore provided by ordinance the Public Service Commissioner is authorized and directed, and the City Council is authorized on its own motion to suspend or revoke the jitney license of any person who shall violate any statute of the State of Texas, or United States of America, or any ordinance of the City of Houston, or regulation of the Public Service Commissioner: Provided, that no license shall be revoked except after a hearing at which the licensee shall have an opportunity to be present, and provided further, that the licensee shall have the right to appeal to the City Council from any order of the Public Service Commissioner, but until such appeal is acted on by the City Council such suspension or revocation shall stand. During the period of such suspension or after such revocation it shall be unlawful for such person to operate any vehicle in the jitney service unless and until the suspension is removed or a new license is granted, should the same be revoked: Provided, in the case of revocation no new license shall be granted to such person until after the expiration of twelve (12) months."

On the 21st day of December, 1925, section 194 of the above-mentioned ordinance was amended so as to read as follows:

"Section 194. No license certificate shall be granted to any person whomsoever for the hire or operation for hire of a hack in the City except upon the conditions that the applicant for such license shall enter into a bond or policy of insurance in the sum of $2500.00, payable to the City for the use and benefit of any person or persons entitled thereto, executed by the person in whose name the license certificate is sought as principal, and a solvent corporation licensed to do business in the State of Texas and authorized to execute such bond or policy of insurance as surety which said bond or policy of insurance shall be conditioned that the principal shall pay all legal damages for injuries sustained by any person, including injuries resulting in death, caused by or on account of the negligence or willful act of the principal or the operator of such automobile for hire or any agent, representative or servant of such principal or the driver of such automobile, in the operation thereof occurring, accruing or that is occasioned, during the period of such license certificate is issued, within the corporate limits of the City, and a further bond or policy of insurance in the sum of $1000.00 payable to the City for the use and benefit of any person or persons entitled thereto, executed by the person in whose name the license is sought as principal and a solvent surety company, authorized to do business in this state, and execute such bond or policy of insurance as surety, which said bond or policy of insurance shall be conditioned that the principal shall pay all legal damages for injury to property of any person on account of the negligence or willful operation of said hack by any one operating same with the knowledge and consent, express or implied, of the principal, within the corporate limits of said City. Said bonds or policies of insurance shall further provide that suit may be brought thereon directly in connection with the principal in any and all causes of action covered by its provision. Should a recovery be had on such bonds or policies of insurance or either of them and the liability thereunder decreased a new bond or policy of insurance in the original amount herein provided for shall be at once substituted or else, failure to do so, shall automatically cancel the license certificate issued by the City herein. The bonds or policies of insurance herein provided for shall be filed with the Public Service Commissioner and, if same be by him approved, retained in his possession and a license certificate issued to the applicant authorizing the operation of such motor vehicle as a hack for hire within the corporate limits of the City. Such license certificate shall state the name of the licensee and the number of such motor vehicle as registered by the State Highway Department of the State of Texas. A granting of such license certificate shall not, however, entitle or authorize any person other than a licensed automobile operator who has secured an automobile license in accordance with the provision of the laws of this City and the State of Texas to operate such automobile for hire."

By amendment the term "hack" is defined as follows:

"Third. The term 'hack' shall mean and include any vehicle operated *for hire* for the *purpose* of *transporting* passengers upon or over the streets of said city other than vehicles operated upon rails or tracks and motor buses, and shall be held to include what is commonly known and designated as 'driverless automobiles' *being all motor* vehicles hired or rented *for passengers* where no driver is furnished and same is operated by the person hiring such vehicle."

On the 28th day of April, 1928, Sam Genusa and some nine or more other parties, residents of the city of Houston, an incorporated city of more than 200,000 inhabitants, and owners in their several rights of divers and sundry automobiles, made their application to Judge Chas. E. Ashe of the Eleventh district court of Harris county for a temporary injunction to restrain the city of Houston and its officers and governing body, to wit, Mayor Oscar F. Holcomb, and H. A. Halverton, Allie A. Anderson, James B. House, and Ben S. Davison, city commissioners, and the police department of said city, from attempting to enforce by criminal prosecution against them, or any of them, the ordinance above mentioned, and from further maintaining any pending prosecutions against them, for the violation of said ordinance, and from arresting and prosecuting any of them for a violation of the same, and from in any manner molesting or interfering with them, or any of them, in the conduct and pursuit of their respective businesses of renting their respective automobiles to their patrons without furnishing drivers for their automobiles. They prayed that said temporary injunction be made permanent on final hearing.

The plaintiffs alleged that they and each of them complied with all the laws of the state of Texas with regard to procuring licenses and license numbers for the year 1928, and have procured licenses from the tax collector to operate their automobiles as required by law, and therefore they have the right by virtue of the state law to operate said automobiles in the city of Houston and on the public roads of Texas, subject alone to such reasonable rules and regulations as may be imposed by the city of Houston.

They alleged that they were engaged in the business of renting their automobiles in the city of Houston to persons who furnish their own drivers, said business being generally known as leasing or renting of driverless cars; that in making such leases they act with care and prudence; that they derive a considerable revenue from such rental. They alleged that the provisions of the ordinance are unreasonable and oppressive and nonenforceable for the following reasons:

"1. That the exaction of said bonds and insurance amounting in the aggregate to $3500.00 for each car used by appellants in their business is so burdensome and confiscatory as to render it impossible for these appellants to rent out their cars and to conduct their business with any benefit whatsoever; that to comply with said provisions of said ordinance in regard to said policy of insurance or bond would destroy any profits which these appellants could possibly receive from the conduct of their business, and the renting of their driverless cars; that by reason thereof said ordinance is not only unreasonable, oppressive and unjust, but the same is null and void because in conflict with section 19 of article 1 of the Constitution of the state of Texas, which provides that no citizen of this state shall be deprived of life, liberty, property or immunity, or in any manner disfranchised, except in due course of the law of the land.

"2. That said ordinance is not only void for the above reasons, but the same is in violation of each and all of the provisions of the Fourteenth Amendment to the Constitution of the United States.

"3. That said ordinance is unconstitutional and void in that it denies to these appellants equal protection of the law in that the exactions and requirements as to appellants and the business in which they are engaged are not required of any other persons or organizations, and said ordinance is discriminatory and constitutes class legislation, in violation of the Constitution of the United States and the state of Texas.

"4. That said ordinance is null and void because in conflict with the laws of the state of Texas in regard to the licensing of automobiles by the state of Texas; that under the laws of the state of Texas, when its laws are complied with, as appellants allege they have done in this particular, and the state of Texas has issued to appellants a state license for each of their automobiles respectively used by them in their said business, appellants have a right to use and operate said automobiles, or to rent the same to their patrons, and the ordinance of the city of Houston herein complained of denies to these appellants the rights and privileges granted to them by the state of Texas when it issued and granted to appellants the license to operate their said automobiles as hereinabove stated.

"5. That said ordinance does not constitute a regulation of appellants' business, but the same is designed and practically has the effect of absolutely destroying the business of these appellants and prohibiting them from engaging in the business at all by reason of the unlawful exactions and requirements set forth in said ordinance.

"6. That said ordinance is likewise null and void in that in giving the bond required by said ordinance in order to obtain a license that appellants are only to give as sureties on such bonds an incorporated surety company which charges a large premium for executing such bonds as surety.

"7. That said city ordinance is null and void because the same conflicts with the laws of the state of Texas in this: That under the laws of this state the owners and lessors of driverless automobiles, such as appellants operate, are not personally responsible either for property damage or injury to person caused when the lessee of said automobile causes said injuries to person or property; and that any attempt to change a state law by said ordinance would conflict with said state law and would therefore render said ordinance null and void and of no force and effect."

The petition was duly sworn to. The court granted a temporary restraining order, .as prayed for, and set May 3, 1928, as a date for hearing upon the application for the injunction.

.The defendants filed their sworn answer, praying for a dissolution of the restraining order and a denial of the injunction prayed for by the plaintiffs. They denied generally the allegations of the plaintiffs' petition and alleged:

That the city in passing said "ordinances was acting by and under the authority granted to it by the Constitution of the state of Texas and by the general laws of the state of Texas and by its charter, and in addition thereto in the passing of said ordinances, the city of Houston, being a home rule city, was fully authorized and empowered by the Home Rule Amendment to the Constitution and enabling act thereof to pass and enforce the ordinances which are complained of by the plaintiffs. That in the passing of said ordinances and in the enforcement thereof the city of Houston was exercising a control over the use of its streets entirely within its power and authority. That in the passing of said ordinances and enforcement thereof the city of Houston is regulating the use of motor vehicles used for hire on the streets of the city and is not charging therefor or attempting to charge."

The cause was called for hearing on the 5th day of June, 1928; and was heard upon the petition, without further evidence. After hearing argument of counsel for the respective parties, the court rendered judgment denying the issuance of the temporary injunction prayed for, reciting in the judgment that the court was of opinion that "the ordinance is constitutional and valid, and not subject to the objections thereto, set forth by plaintiffs in their petition." The court in such judgment ordered that the cause be continued on the docket for a hearing on the merits of the case. The plaintiffs have appealed.

■ It is apparent that the issues presented by the appeal are: Are the provisions of the ordinance complained of unconstitutional or unreasonable, and for both or either of such reasons void and unenforceable? That the plaintiffs' business of leasing or hiring. driverless automobiles to the general public is a business of public nature and that they thereby contemplate and in fact do make use of the streets of Houston in such manner as to affect the public welfare, thus subjecting them as a class to reasonable regulations by the city, is unquestionably true. Revised Civil Statutes of 1925, Article 1175, Sections 12 and 20; City of San Antonio v. Besteiro (Tex. Civ. App.) 209 S. W. 1172.

■ A city regulation relative to the use of its streets by automobiles which is within the scope of the city's charter powers is not inhibited .by the state law upon the subject, unless there be a conflict between the two. Ex parte Mooney, 106 Tex. Cr. R. 156, 291 S. W.

246. The business of renting driverless automobiles to the public for temporary use over the streets of a city is a public use, and can be lawfully regulated under the provisions of section 20 of article 1175, which, among other things, empowers cities:

"To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving bond or other security for the operation of the same."

We anticipate that appellants will not dispute the foregoing three propositions, nor will they dispute the authority of the city to regulate by a reasonable ordinance the use of their automobiles on the streets of the city, and to require the execution by them of a bond conditioned upon the observance of such reasonable regulation. But they do contend that the ordinance attacked requires of them the execution of a bond creating a liability against them contrary to the provisions of the Constitution and a general law enacted by the state Legislature, and therefore void and unenforceable.

■ No rule, perhaps, is better settled than that, under the common law of England, except as liability may be imposed by statute or the owner may have been guilty of personal negligence, as, where he has knowingly intrusted his vehicle to an incompetent driver, such owner is not liable for the damage caused by negligence of one to whom he may hire or loan his vehicle, and to whom he has relinquished control over the vehicle, and who uses it for his own purposes. Under the common-law rule, to impose liability upon the owner for the acts of the hirer or borrower, he must have been acting as the agent or servant of the owner.

By section 5 of article 11 of our Constitution, known as the Home Rule Amendment, it is provided that a city having more than 5,000 inhabitants may adopt or amend its charter, "providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

■ Article 1 of the Revised Civil Statutes of 1925 is a general .law enacted by the Legislature of this state. It puts in force in this state the common law of England, in so far as such common law is not inconsistent with the Constitution and laws of this state, and such common law is now, and was at the time the city ordinance attacked by appellants was passed, and has been at all times since such passage, in force in this state. So, then, if the ordinance complained of is inconsistent with the common law of England, made a general law of this state by the Legislature, in that, if enforced, it would impose upon ap-

pellants a liability from which they are exempted by article 1 of our Statutes, it is void and unenforceable.

That part of the ordinance, section 194, providing that persons engaged in business such as those of appellants, shall, before they can conduct their business in the city of Houston, enter into a bond or policy of insurance payable to the city for the use and benefit of any person or persons entitled thereto, to be conditioned that the principal shall pay all legal damages for injuries sustained by any person, caused by, or on account of, the negligence or willful acts of the driver of the vehicle, regardless of whether such driver be the servant or agent of the owner thereof or not, undoubtedly does impose upon the principal of the required bond a liability from which he is exempted by the common law of England, and in that respect inconsistent with both the Constitution and a general law enacted by the Legislature.

Having reached the conclusions above expressed, we hold that the ordinance is void, and that it cannot be enforced against appellants, and that the court erred in refusing the temporary injunction prayed for by appellants. From what we have above said, it follows that the judgment of the trial court should be reversed, and the cause remanded, with instructions to the trial court to grant the injunction prayed for; and it has been so ordered.

Reversed and remanded, with instructions.