## MIKS v. LEATH.
### No. 3382.

Court of Civil Appeals of Texas. Amarillo.
April 2, 1930.

W.. B. Handley, of Dallas, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, for appellee.

HALL, C. J.

This is a suit by O. B. Leath to recover for personal injuries to plaintiff and for damages alleged to have resulted to his automobile from a collision between plaintiff's automobile and a motortruck being driven out of the defendant's place of business, across the sidewalk, by defendant's employee.

Plaintiff alleges: That during the months of December, 1928, and January, 1929, defendant owned and was conducting a feed store in the city of Wichita Falls, at No. 418 Indiana avenue, and three doors north of the corner of Fifth street and Indiana avenue, and that the defendant used a motortruck in connection with his business. That, while plaintiff was going into the city of Wichita Falls in a southerly direction, he had occasion to pass said feed store. That the feed store has a driveway which·crosses the sidewalk, used in going into and out of the store, and vehicles, in leaving the store, are compelled to cross the sidewalk to reach the street. That Indiana avenue, which runs north and south, is paved on the east and west sides but has an unpaved strip in the center thereof for parking vehicles. That, during the latter part of December, 1928, while plaintiff was driving toward the business section of the city at a rate of speed not exceeding twenty miles per hour, and maintaining a cautious lookout, the

defendant's truck dashed out of the building along the driveway, crossing the sidewalk into Indiana avenue at a rate of speed in excess of four miles per hour, without giving any warning of any character to vehicles driving along Indiana avenue going south. That plaintiff's car, at that time, was approximately ten to twenty feet from the driveway. That, as soon as he saw the truck, he threw on his brakes in attempting to avoid a collision, but, by reason of the careless manner in which the truck was being driven out of the building, without warning, and because it was exceeding four miles per hour, a collision occurred. The plaintiff endeavored to drive his car into the unpaved space in the center of Indiana avenue to avoid colliding with said truck, but the truck was going at right angles to the direction in which plaintiff was driving, and it was impossible for plaintiff to avoid the collision. That said truck struck plaintiff's car at or near the front with such violence that it knocked plaintiff's car into the unpaved area, where it stopped near the center of the street. That prior thereto the city of Wichita Falls had enacted an ordinance, No. 598, which was then in effect. Section 24 of said ordinance provides, in substance, that, it shall be unlawful for any motor vehicle to cross any sidewalk, or to approach the entrance of any alley, or emerge from any alley onto or across any sidewalk and into the street, at a greater rate of speed than four miles per hour, and without giving warning to other vehicles, without sounding a horn, bell, or other emergency alarms. That defendant's servants and employees operating said truck had not complied with section 73 of said ordinance, regulating the licenses of chauffeurs, and that the chauffeur driving said truck was not legally registered at the time, but was operating said vehicle for compensation. That defendants acted further in violation of section 77 of said ordinance, which requires chauffeurs of motor vehicles to give warning, and not to exceed four miles per hour when driving over a sidewalk, and declares that a violation thereof constitutes negligence. That the acts and omissions complained of and the negligence hereinabove set out were the proximate cause of plaintiff's damages and injuries.

Plaintiff further alleges that the acts complained of constituted negligence, and were the proximate cause of his injuries and damages, without regard to the provisions of the ordinance referred to. He sets out in detail the extent of the damages to his car, that, notwithstanding his efforts to have it repaired, it is still defective, and prays for judgment in the sum of $350 damages to the car. He further alleges that, because of the collision, he was violently thrown against the steering wheel and the left door of his automobile, and sets out in detail the kind, character, and extent of personal injuries suffered by him as a result thereof, and prays for damages to his person in the sum of $2,500.

The defendant answered by general demurrer and special exception, and attacks the validity of section 24 of said Ordinance No. 958 as being invalid and unconstitutional; that the same is in violation of and contravenes the law of the state of Texas, which fixes the speed of motor vehicles within incorporated cities, at not exceeding twenty miles per hour. He pleads contributory negligence on the part of plaintiff, in that the latter was exceeding the speed limits; that his automobile was not provided with adequate brakes kept in good working order; that he failed to exercise ordinary care, and was driving his automobile at a time and place and under circumstances and in such a manner as to render a collision unavoidable; that, at the time of the accident, plaintiff was violating certain sections of said ordinance by driving along the streets in an automobile, which was not provided with adequate brakes kept in good order; that he was driving recklessly and did not have his car under control, and, in so doing, was guilty of negligence, as defined by section 77-b of said ordinance, and of section 77-c thereof, which makes a collision, under said circumstances, prima facie evidence of negligence.

Special issues were submitted to the jury, in response to which they found that the driver of defendant's truck drove into the street at a speed of more than four miles per hour, without sounding his horn or giving any other warning signal; that such acts were the proximate cause of the collision; that, at the time of the accident, plaintiff was not driving his car at a greater rate of speed than twenty miles per hour; that the driver of the truck did not exercise ordinary care in driving his truck across the street into the parkway in the center thereof, and that his failure to do so was the proximate cause of the collision; that the collision was not an unavoidable accident; that plaintiff was not operating his automobile without having adequate brakes in good working order; that the plaintiff used ordinary care in operating his automobile at the time of the collision; that the rate of speed at which plaintiff was driving was not negligence.

The verdict fixes the extent of the injury to the car at $200, doctor's bills and medicine at $61, loss by reason of inability to labor at $75, and pain and suffering at $1,000.

From a judgment based upon the verdict, the defendant appeals.

■ By the first proposition, the defendant insists that, because plaintiff alleged that defendant's truck struck his automobile and because of the uncontroverted evidence which shows that plaintiff's automobile ran into and struck defendant's truck, the judgment is not supported by the pleading, proof, and the ver-

dict; and, by the second and third propositions it is insisted that, because the proof does not conform to the allegations, and for the further reason that plaintiff's automobile ran into the defendant's truck, as shown by the evidence, there exists a fatal variance between plaintiff's pleadings and proof. These matters are urged as presenting fundamental error.

It will be observed that the acts of negligence first set out by plaintiff are the driving by defendant's employee across the sidewalk at a greater rate of speed than four miles per hour and in failing to sound an alarm. The jury found for plaintiff upon both contentions. Plaintiff alleges that these wrongful acts resulted in a collision.

While there may be some statements in the pleadings and evidence to the effect that the truck struck plaintiff's car and vice versa, these are immaterial and do not allege or prove negligence, but rather they show the result of the negligence alleged. The collision was not alleged as an act of negligence, but to show the connection between the alleged negligence and the injuries, or, in other words, to show proximate cause. For that purpose it was proper to make such allegations. The evidence shows a collision and that both cars were moving when they collided. The collision is the material fact which shows the causal connection between the alleged negligence and the injury, and whether the truck came out of the driveway and ran into the automobile as the plaintiff was passing that point, or whether the truck had reached the pavement and plaintiff's automobile ran into or against it, is surplusage, since there was a collision in either event.

■ If a party proves the essential facts, he is not required to prove anything more, especially mere matters of surplusage, although they be alleged. Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 631; Wise v. Boyd (Tex. Civ. App.) 267 S. W. 543; Shelton v. Lock (Tex. Civ. App.) 19 S.W.(2d) 124. What is here said disposes also of the seventh proposition.

■ The fourth and fifth propositions assail the validity of section 24 of the ordinance, insisting that the section is unreasonable and contravenes the state law relating to the same matters. Whether it is unreasonable is a question of law for the court. A-Loaf Baking Co. v. Pace (Tex. Civ. App.) 19 S.W.(2d) 459, 461. In that case Judge Jackson said: "The party attacking such an ordinance, if not unreasonable on its face, must allege and prove facts relied upon to show that the ordinance is unreasonable, but whether such facts show the ordinance to be unreasonable is a question of law for the court. City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; H. & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850; Scruggs v. Wheeler (Tex. Civ. App.) 4 S.W.(2d) 616; McQuillin, Municipal Corporations (2d Ed.) vol. 2, par. 766, p. 729."

■■ No fact is alleged by defendant tending to show that section 24 of the ordinance is unreasonable in its provision in requiring motor vehicles to cross a sidewalk at a speed not exceeding four miles per hour. We think that in this age of speed craziness, when so many pedestrians are being killed or crippled by reckless drivers of motor vehicles, a regulation limiting their speed to four miles per hour in driving out of a building and across a sidewalk in a populous city, and requiring the sounding of an alarm, is a reasonable and humane enactment. If there is any doubt as to the reasonableness of an ordinance, it will be held valid. Ex parte Wilchar, 102 Tex. Cr. R. 549, 278 S. W. 850.

■ The state law has no provision relating to that particular matter, and there is therefore no conflict between section 24 and any state statute. It is simply an additional law concerning a matter not provided for or included in any state statute, and, if reasonable, is valid. Lamar & Smith v. Stroud (Tex. Civ. App.) 5 S.W.(2d) 824; El Paso Elec. Co. v. Collins (Tex. Com. App.) 23 S.W.(2d) 295; Ex parte Mooney, 106 Tex. Cr. R. 156, 291 S. W. 246; 5 Tex. Jur. pp. 576, 581, 582; 43 C. J. pp. 218–220.

■ A city's regulation, relative to the use of the streets by vehicles, which is within the scope of its charter powers, is not inhibited by state law or the Constitution, unless there is a conflict. Genusa v. City of Houston (Tex. Civ. App.) 10 S.W.(2d) 772.

■ When properly construed, section 24 is a traffic ordinance, rather than one relating to the speed of vehicles. Ex parte Wilchar, supra; 42 C. J. pp. 634, 635. We therefore conclude that the section of the ordinance in question is valid and reasonable.

■ The sixth proposition is multifarious, as it complains of the refusal by the court to submit eight different issues inquiring as to four unrelated and separate facts, and is therefore not entitled to consideration. 3 Tex. Jur. § 616. If considered, however, they are inquiries in relation to matters already included in the main charge of the court, or they assume facts, or are immaterial and indefinite.

■ The eight, ninth, and tenth propositions relate to alleged misconduct of the jury. The eighth complains of the act of one of the jurors in viewing the premises without authority. The obsolete procedure of view by the jury has been abolished by R. S. art. 2175.

R. S. art. 2234, provides: "Where the ground of the motion [for new trial] is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other

testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material."

The record with reference to this proposition shows that H. J. Thompson, one of the jurors, testified that one or two of the jurors said they went by and looked at the location where the accident occurred. D. K. Bell, the foreman, testified that he did not make any special trip down there, but he had to pass the place every day, and his going by there did not, in any way, enter into his consideration of the case; that he just looked to see if there was one driveway or two. Whether there was one driveway or two, was not an issue in the case.

"If it affirmatively appears from the record as a whole that the misconduct was with reference to immaterial issues * * * and that such misconduct did not enter into the answers to the material issues submitted," it is not ground for reversal. McGee v. Cunningham (Tex. Civ. App.) 17 S.W.(2d) 494, 496; Maddox v. Clark (Tex. Civ. App.) 163 S. W. 309; Id., 107 Tex. 212, 175 S. W. 1053.

By the ninth proposition it is contended that the discussion, by the jury, of the question whether defendant's attorney was also the attorney for an insurance company, is reversible error. The record shows that the juror Thompson testified, upon the hearing of the motion for new trial, that one man in the jury room said that the defendant's attorney was also the attorney for an insurance company. He said he only knew one man on the jury personally, and did not know the name of the juror who made the statement. He further said that, when that statement was made, he said that it had nothing to do with the case, and that three or four others also said that, at the same time, and nothing else was said about it. He also testified that he did not know whether defendant's attorney was also the attorney for an insurance company or not. Bell, the foreman, said, that after they had been in the jury room some time, one juror said he supposed that defendant's attorney was an insurance company lawyer, and that he (Bell) remarked that the jury could not discuss that matter at all, and that there was no further discussion of it.

The record as to the eighth and ninth propositions does not show reversible error. Russell v. Adams (Tex. Civ. App.) 18 S.W.(2d) 189; People's Ice Co. v. Glenn (Tex. Civ. App.) 8 S.W.(2d) 735; Bradley v. T. & P. Ry. (Tex. Com. App.) 1 S.W.(2d) 861.

The tenth proposition raises a more serious question. The evidence relative to it is as follows:

H. J. Thompson, a juror, testified:

"When we got to the question of how much damages, then we were pretty well mixed up;

there was some wanted to give him the full amount that he was asking for—there was about three for that, and then from there on down to zero. * * * In determining the amount to be allowed, there was something said about the possibility of the plaintiff's injuries being permanent—that was mentioned in reference to wanting to give him the whole amount, but I don't know if that was the sole reason; one man said that he would not have that happen to him for any amount of money. * * * I said that I would not give above one thousand dollars—one other man wanted to give five hundred dollars—others more—finally we all agreed on one thousand dollars.

"As to what was said in the jury room with reference to this truck travelling out into the street like it did, with reference to the driver of the defendant having violated a city ordinance or some state law—well, we all agreed that he had violated the city ordinance in crossing the street as he did. I mean that we all agreed that under the city ordinance, he had no right to go out across the sidewalk, onto Indiana Avenue like he did.

"As to what was the basis for that impression, I can only give you my own reasons for it; just a short time prior to this trial there was an editorial in the Daily Times about driving out of an alley, and I remembered that—the piece in the paper, and it said that you could not cross the street coming out of an alley, that you must turn your car to the right. The editorial had reference to the city ordinance in effect in Wichita Falls. Well, Mr. Bell [the foreman] said that was the city ordinance, and Mr. Taylor had stressed it several times, in asking the truck driver why he did not turn to the right and go to the corner and then turn, and that lead me to believe that it was a city ordinance. I thought that was the law. I thought that the man had no right to drive directly onto Indiana Avenue. * * *

"One of the issues submitted to us was, 'Did the driver, McWhorter, exercise ordinary care, as that term has been defined to you, in driving his truck across the street, to the parkway, in the center thereof'—and that issue was answered 'No', by the jury. My impression about the city ordinance I spoke about, did have an influence on me in answering that issue. My impressions as to the city ordinance did have an effect on my verdict on the case.

"In answering the special issue with reference to whether the collision was the result of an unavoidable accident, will say that my impression as to the city ordinance had a bearing on my verdict and answer to that issue; I thought that he was violating the city ordinance. In fact, I will say that determined the whole case with me, so far as I was concerned.

"Mr. Bell was the member of the jury who insisted that there was a city ordinance

that forbid this man driving the truck directly out on Indiana Avenue to the parking place. It confirmed my belief that there was such an ordinance. * * *

"In answering the issue as to whether the driver of the truck drove out of the driveway into the street without sounding his horn, I did not take into consideration anything about the ordinance I have mentioned. I did take into consideration, the ordinance that I have talked about, in answering the issue as to whether the driver exercised ordinary care. * * *

"I think that Mr. Taylor was the first one to stress about the city ordinance with reference to crossing out from an alley; what Mr. Taylor said had a whole lot to do with my thinking that was the law. When we got in the jury room, I asked if that was the law, if there was such an ordinance, and Mr. Bell said there was, and I think that every man in the jury room was convinced that there was."

D. K. Bell, foreman of the jury, also testified: "I do not recall any discussion among the jurors about an ordinance in effect in Wichita Falls to the effect that it was a violation of the law to drive out into the street like this driver did—I did not hear any one say there was such an ordinance.

"In arriving at the answer to Issue No. 2, with reference to whether the driver used ordinary care, as that care was defined to us, in driving his car to the parking space in the center of the street, I did not consider and did not take into consideration the question of any ordinance, or any violation of any ordinance, in driving straight out on that street—there was some discussion about driving out on a thorofare and driving up the street, and turning that way.

"We did consider that the driver of the truck should have turned to the right and gone on down to the corner and come back, rather than to run straight across the street. We thought it was his duty to do that. I thought he had no right to go directly across Indiana Avenue—I could not say if others took that into consideration—I know I did; that was the reason that I answered this issue that this man failed in the exercise of ordinary care in driving out as he did. I found it like I did because of the way I felt about it.

"The only city ordinance that I considered at all, was what was read right here to the jury. I felt that he was not exercising ordinary care in coming out of that driveway like he did, and going straight across the street.

"I thought there was an ordinance read in evidence to the effect that it was the duty of this truck driver, to turn to the right upon coming out of that driveway, and entering onto Indiana Avenue. That is correct.

"As to whether my thinking that there was such an ordinance in evidence was material in reaching the verdict I did—well, you might say yes, and you might say no. My best recollection was that there was such an ordinance introduced in evidence; I thought there was."

It will be observed from this testimony, which is not controverted, that the jury took into consideration the supposed existence of an ordinance which required a truckman, driving out of an alley or driveway in the block, to turn to the right. One of the jurors said he saw in the daily paper a statement that there was such an ordinance, and the attorneys for the appellee discussed the effect of such an ordinance, and both jurors, whose testimony is above quoted, said they took it into consideration in deciding the issues relative to the truck driver's negligence in going straight across the street from the driveway. They further said that the effect of such an ordinance had a material influence upon their verdict in answering issue No. 2. If such an ordinance was ever introduced in evidence, it does not appear in the record.

The testimony does not show how close to the driveway plaintiff's car was moving at the time of the accident and, so far as the record shows, if he had turned to the right, as required by the supposed ordinance, there would not have been a collision.

From this we conclude that the communication was material, and had a prejudicial effect upon the jury in rendering their verdict.

■ Granting a new trial for misconduct of the jury in matters of this kind is not discretionary with the trial court, where reasonable minds could not differ as to the facts. Abrams v. Bradshaw (Tex. Civ. App.) 2 S. W.(2d) 917; Black v. Continental Casualty Co. (Tex. Civ. App.) 9 S.W.(2d) 743; Giles v. Tyson (Tex. Civ. App.) 13 S.W.(2d) 452.

In Murray v. Morris (Tex. Civ. App.) 17 S.W.(2d) 110, 112, Judge Jackson said: "It is the settled law of this state that, 'If, upon a consideration of the whole or the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of the discretion by the trial judge, and reversal becomes the duty of appellate courts.' International-Great Northern Ry. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578."

In Moore v. Ivey, 277 S. W. 106, the same language is used, and in that case the Commission of Appeals held that, when misconduct of the jury is once shown and there is reasonable doubt as to its effect, that doubt

must be resolved against the verdict, especially if, upon a material issue, a juror be influenced at all by misconduct, and the extent of such influence is immaterial.

It is further held in that case that the absence of actual effect of misconduct of the jury cannot be established by most emphatic denials made by jurors when they are called to account; and, where there was, at least substantially reasonable doubt as to the effect of the improper conduct, after the verdict was agreed upon, the appellate court is required to treat the occurrence as transpiring during the deliberations of the jury, prior to reaching of the verdict.

In further discussion of such a practice, the court said that the self-serving declarations of jurors, hearing discussion of extraneous matters prior to the verdict, that they were not influenced thereby, but that they were governed by the charge of the court and evidence, are not conclusive.

The opinion in the Moore Case is based upon H. & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Hines v. Parry (Tex. Com. App.) 238 S. W. 886; San Antonio Traction Co. v. Cassanova (Tex. Civ. App.) 154 S. W. 1190; J. H. W. Steele Co. v. Dover (Tex. Civ. App.) 170 S. W. 809; Yanez v. Traction Co. (Tex. Civ. App.) 126 S. W. 1176.

We think the matter complained of by the tenth proposition shows reversible error.

Reversed and remanded.