### WAID et al. v. CITY OF FORT WORTH.
### (No. 10802.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 10, 1923. Rehearing Denied Dec. 8, 1924. Writ of Error Refused Jan. 23, 1924.)

**1. Venue ⊙70 — Uncontradicted application for change should be granted.**

When an application for change of venue is made under Rev. St. art. 1912, and it is uncontroverted, it is the duty of the court as a matter of law to grant the application and change the venue, in view of article 1913.

**2. Appeal and error ⊙874(2)—Assignment of error for failure to grant change of venue overruled.**

Where application was made for change of venue under Rev. St. art. 1912, on the ground that a combination was instigated against plaintiff by influential persons, but no ground of disqualification of the trial judge was urged and the trial was to be upon a motion to dissolve a temporary injunction in vacation, and the appeal is from an order dissolving the temporary injunction, an assignment that the court erred in denying a change of venue will be overruled.

**3. Appeal and error ⊙106—No appeal from order overruling application for change of venue.**

No appeal is allowed from an order overruling an application for a change of venue under Rev. St. arts. 1912, 1913.

**4. Municipal corporations ⊙661(1)—Power of city to control streets.**

The control of the streets of the city of Fort Worth is not only within the general police power of the organization, but such power has also been expressly conferred by its charter granted by Sp. Acts 31st Leg. (1909) c. 31, subc. 4.

**5. Constitutional law ⊙211—Legislature and municipalities may adopt reasonable classifications.**

Under Const. art. 1, § 3, the Legislature and municipalities that in this respect have like power may determine what differences, situations, circumstances, and needs call for difference in classification, subject to the supervision of the courts as the final interpreters of the Constitution to see that it is actual classification, and not special legislation under that name, and a classification adopted must not be based upon an insidious and unreasonable distinction or differ with reference to similar kinds of conditions, but with such limitations the power of municipal bodies upon which are imposed the duty of protecting the lives and limbs of its citizens from injury are supreme.

**6. Constitutional law ⊙235—Court held unable to say city discriminated in prohibiting operation of motor busses on specified streets.**

It cannot be said that the city of Fort Worth, under Ordinance 936, unjustly discriminated against certain bus lines by prohibiting the operation of motor busses along, across, or upon specified streets of the city under Const. art. 1, § 3, as against contention that other bus lines using other streets where not regulated and freight trucks were permitted to operate upon the streets in question.

**7. Constitutional law ⊙292—Ordinance prohibiting motor busses on certain streets not invalid as taking property because terminals rented on such streets.**

Motor bus companies cannot contend that an ordinance, prohibiting motor busses on certain streets on which certain motor bus lines had rented terminals, was invalid as depriving such motor bus companies of property contrary to the guaranties of the Constitution; the effect of the ordinance upon the terminal stations being but indirect, and there being nothing to show that the market value of property rented has been disclosed.

**8. Constitutional law ⊙81—Business may be regulated under police power.**

The right of every person to pursue any lawful business, occupation, or profession is subject to the paramount right, inherent in every government as a part of its police power, to impose such restrictions and regulations as the protection of the public may require, and such restrictions and regulations may be imposed within proper limits without in any way impairing the fundamental right to engage in such occupation.

**9. Municipal corporations ⊙703(1)—Ordinance prohibiting motor busses on certain streets not invalid as destroying business.**

An ordinance prohibiting operation of motor busses on or across certain streets held not invalid as destroying the business of certain bus companies, where it only required them to use different routes which would take a few minutes more time to cover the distance to other stations.

**10. Municipal corporations ⊙592(1)—State license law held not to render invalid ordinance prohibiting motor busses on certain streets.**

Vernon's Ann. Civ. St. Supp. 1918, art. 7012½, relating to registration of automobiles, does not prevent a city from passing an ordinance prohibiting the operation of motor busses upon certain streets because of conjested condition thereof.

**11. Municipal corporations ⊙703(1)—City may regulate automobiles carrying passengers between cities.**

A city may validly prohibit the operation of motor busses on certain streets because of the conjested condition, as against the contention that a city is without power to control busses operated for hire elsewhere than in the limits of the city; the objecting concerns being motor bus companies operating between cities.

---

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by E. C. Waid and others against the City of Fort Worth. From an order dissolving an injunction, plaintiffs appeal. Affirmed.

Mays & Mays, of Fort Worth, F. M. Chaney, of Dallas, and Simpson, Moore & Parker, of Fort Worth, for appellants.

Rhinehart Rouer and Gillis A. Johnson, both of Fort Worth, for appellee.

CONNER, C. J. , This suit was instituted by E. C. Waid, B. D. Yates, and F. M. Waid, acting for themselves and for all those similarly situated and engaged in similar business, on the 3d day of August, 1923, to enjoin the enforcement of Ordinance No. 936, duly enacted and promulgated by the board of commissioners of the city of Forth Worth, prohibiting the operation of motor busses along, across, or upon specified streets of the city. The city responded to the action through its duly constituted authorities by filing a motion to dissolve the injunction, which, upon a hearing on the 14th day of August, 1923, was dissolved by the judge of the Sixty-Seventh judicial district, to which the case had been transferred, and this appeal is from said order of dissolution. We should perhaps first notice an objection not going to the merits.

Error is assigned to the action of the trial judge in refusing to grant an application for a change of venue to another county. The application is in strict compliance with Rev. Statutes, art. 1912, which provides that a change of venue may be granted in any civil cause pending upon the application of either party, supported by his own affidavit and the affidavit of at least three credible persons, residents of the county in which the suit is pending, for any of the reasons specified in the article. The ground specified in the application was:

"That there is a combination against him instigated by influential persons, by reason of which he cannot expect a fair and impartial trial."

[1] Generally speaking, when an application of the kind is uncontroverted, it is the duty of the court, as a matter of law, to grant the application and change the venue. See article 1913, Rev. Statutes; Ellis v. Stearns (Tex. Civ. App.) 27 S. W. 222; Freeman v. Ortiz (Tex. Civ. App.) 136 S. W. 113. We are of the opinion, however, that the articles of the statutes and authorities cited have no application to the present proceeding.

In the bill of exception taken to the action of the court, it is recited that when the cause was called for trial upon the motion to dissolve, the appellants requested a jury trial, which was refused. It was further recited that the granting of the temporary writ and the trial of the motion to dissolve occurred in the summer vacation of the court, and that no jury would be available until the third Monday in September, thereafter, and that after the demand had been refused appellants immediately filed their application for a change of venue.

[2, 3] In the application for the change of venue no ground of disqualification of the trial judge is urged, and the bill of exception seems to justify the inference that the desire for the change was either to thus secure a delay or to have the opportunity for a jury trial. It is to be remembered that the trial upon the motion to dissolve was not upon the merits, but interlocutory in character, and we know of no authority, and none has been cited in behalf of appellants, which, in such a proceeding, entitles a party, as a matter of right, to a trial by jury. As shown, the court was sitting in vacation, the order appealed from is interlocutory, and is reviewable here only because of the express provisions of the statutes authorizing an appeal from orders granting, refusing, or dissolving temporary writs of injunction. No appeal is allowed from an order of the court overruling an application for a change in venue. We accordingly overrule appellants' assignment and propositions relating to this matter.

But did the court err, as assigned, in dissolving the temporary injunction? The ordinance in question is not attacked because of a want of any formality in its enactment. It is attacked on the ground that it is unreasonable, oppressive, and discriminatory, and that the effect of its operation would be to wholly exclude the appellants from carrying on a lawful and peaceable business, and destroy their property rights and subject them to fines and imprisonment. It is further charged that the effect of the ordinance will be to produce a monopoly in favor of the Northern Texas Traction Company and to deprive appellants, who are engaged in the transportation of passengers for hire, of pursuing a lawful business granted to them by the state of Texas.

The pleadings and evidence show without dispute that appellants are engaged in transporting passengers for hire in automobiles between the cities of Fort Worth and Dallas, and intermediate points. The ordinance by its definitions brings appellants within its scope and prohibits the operation of any automobile, truck, or motor vehicle engaged in the business of carrying passengers for hire within the city limits of Fort Worth, over, along, or upon or across Main, Houston, Commerce, Jones, Throckmorton, Front streets, and the Dallas pike; all streets named, except Front street, extend from north to south through the business district and connect with Front street, which extends from the Texas & Pacific station in

an easterly direction until its conjunction with the Dallas pike, which is a macadamized highway. Section 5 of the ordinance reads as follows:

"The present crowded and congested condition of the traffic on the streets and portions of streets hereinbefore mentioned, and the constantly increasing number of automobiles and othe vehicles using said streets, and portions of streets, hereinbefore named, create a dangerous condition and menace to life and property, thereby making it imperatively necessary to adopt and enforce the regulations herein described; and this ordinance is, and is hereby declared to be, an emergency measure necessary in the ordinary course of the city's affairs, and a measure necessary for the immediate preservation of the citizens of the city of Fort Worth, and shall be in force and effect from and after its passage, and five days publication, as required by law."

The evidence upon the hearing undoubtedly warranted the conclusion on the part of the trial judge that the streets named were, especially at times, congested with the ordinary traffic of the city, and that especially Front street and the Dallas pike to the city limits were badly congested. The city of Fort Worth is acting under a special charter granted by the Thirty-First Legislature in 1909 (Sp. Laws 1909, c. 31). By the terms of the act all courts and tribunals are required to take judicial cognizance of its provisions, and by chapter 2, § 21 of the charter, it is provided that—

"The board of commissioners of said city shall be vested with the power and charged with the duty of making all laws or ordinances not inconsistent with the Constitution of this state, touching every object, matter and subject within the local government instituted by this act."

Section 4 of chapter 9 of the Charter empowers the board of the commissioners of the city—

"to enact and enforce ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove nuisances of all kinds and descriptions, and to preserve and enforce the good government, order and security of said city and of its inhabitants, and have and enjoy general police powers of a city."

And in chapter 4, relating to streets and sewers, among other things, it is specially provided that the board of commissioners shall have the power—

"to prevent the incumbering of the streets, alleys, sidewalks, and the public grounds with carriages, wagons, carts, hacks, buggies or any vehicle whatever," etc.

[4] It seems quite plain to us that the control of the streets of the city is not only within the general police powers of the organization, but also that such power has been, in the instance before us, expressly conferred by the charter of the city granted by the Legislature. In treating of this subject, the San Antonio Court of Civil Appeals, in the case of Greene v. City of San Antonio, 178 S. W. 6, speaking through Chief Justice Fly, said:

"The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given. There could be no greater use of the streets for business purposes than that in which appellant is engaged. He must move swiftly along the streets, obstructing the passage, to some extent at least, of those who have a vested right to use the streets for passage, from point to point, he will, by building up and conducting his private business entirely on the streets, be wearing and wasting that which was primarily intended for the passage of persons along the streets, and to obtain these great privileges he must comply with the conditions fixed by the city of San Antonio."

The same court, in the case of City of San Antonio v. Stokes, 246 S. W. 706, again speaking through the same able judge had this to say:

"Although every question involved in this case has been settled by this court and other courts, both of this state and of other states time and again, the writ of injunction prayed for was granted, and appellants have appealed * * * and this court declared in terms too plain to be misconstrued or misunderstood that the city of San Antonio has the absolute control over its streets and has the constitutional power to regulate the use of the streets and to absolutely deny the use of them for the prosecution of such a business as that of a public carrier for hire. * * * The matter is settled for once and all, and nothing can be added to the reasons for sustaining ordinances giving cities the authority to regulate, control, or even prohibit certain traffic on their streets, and they need not be amplified, or repeated in this case."

Authorities of like tenor and effect might be multiplied, but we think the quotations made are sufficient to manifest the principles herein applicable and by which, within constitutional limitations, we are to be guided in the further determination of this case.

Appellants offered evidence tending to show that other persons are operating auto busses, or "jitneys" as they are termed, between the cities of Fort Worth and Mineral Wells, and other places, and over streets, in particular West Seventh street, which is at times badly congested with the traffic of the city. The evidence further tends to show that in addition to the usual traffic over the Dallas pike between Fort Worth and Dallas there are a number of freight trucks operating, some of which are very large, in the language of one of the witnesses almost as large as a "railroad box car." And because of the particulars noted it is urged that the ordinance is discriminatory in that

it is not made to operate alike upon all persons similarly situated.

In section 3, art. 1, of our Constitution, all citizens are given equal rights, and it is said that—

"No man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

[5, 6] But it seems well settled that the Legislature, and municipalities that in this respect have like power, may determine what differences and situations, circumstances and needs call for difference in classification, subject to the supervision of the courts as the final interpreters of the Constitution to see that it is actual classification and not special legislation under that name. The classification adopted must not be based upon an insidious and unreasonable distinction or differ with reference to similar kinds of conditions, but with such limitations the powers of municipal bodies upon which are imposed the duty of protecting the lives and limbs of its citizens from injury are supreme. See note 80 and authorities therein cited, 7 Cyc. p. 185. See, also, Lodge v. Johnson, 98 Tex. 1, 81 S. W. 18, in which our Supreme Court said:

"It is well settled by the decisions of this court, as well as by the decisions of the Supreme Court of the United States, that the Legislature may classify persons, organizations and corporations according to their business and may apply different rules to those which belong to different classes."

See, also, R. C. L. p. 239, and page 373, §§ 369, 370.

All that is required in this particular is that legislation in respect thereto must be made to apply to all persons alike under the same conditions. See Lodge v. Johnson (Tex. Civ. App.) 77 S. W. 661; Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878. In the latter case, in discussing this question, our Supreme Court quoted with approval from authorities the following statement of the rule:

"When legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws if all persons brought under its influence are treated alike under the same conditions."

In this case the evidence substantially shows that East Front street and the Dallas pike to the east boundary line of the city form the only direct passway for travel by auto, wagons, busses, etc., from the city of Dallas and intermediate villages, and the outlying suburb of Sycamore Heights, composed of some 3,000 or more inhabitants; that hundreds, if not thousands, of vehicles of the kind daily traverse this route; and that at times the street, particularly on circus days and times of other public attrac-

tions, is badly congested. The evidence further tends to show that the ordinance under consideration originated, so far as the record shows, by petitions to the Commission seeking regulation of the jitney drivers.

It further appears that appellants own or operate two distinct bus lines between Dallas and Fort Worth, and have been, and now insist upon, entering and departing from the latter city over the route just indicated; that the distance between the cities just named is 34 miles and that the schedule or running time for the jitney operators is an hour and 15 minutes; that the schedule of the electric railway cars is for the "limited" 1 hour and 10 minutes, and that of the local electric 1 hour and 25 minutes; that between the cities named are the villages of Handley, Arlington, Dalworth, Grand Prairie, and Arcadia Park, one or more of which have limited speed laws; that appellants operate between the cities of Dallas and Fort Worth the "Red Star" stage line and the "Black Diamond" stage line; that the Red Star stage line operates 17 passenger cars of the Cadillac make; that the Black Diamond line operates 16 seven-passenger cars of the Cadillac make, save perhaps one which is a Chandler; that each car is supposed to make two trips back and forth daily between the cities of Fort Worth and Dallas, and the average number of passengers carried per car per day is 20. In disposing of the contention that the ordinance is discriminatory, it is to be observed that the freight trucks are reasonably susceptible of a different classification from that of carriers of passengers, and that the ordinance in question as to prohibitive streets in fact applies alike to all motor vehicles carrying passengers for hire, including those operating to Mineral Wells and other places, as well as those operating between Fort Worth and Dallas. Appellants have no interest in routes other than their own, and as to whether the classification of the present ordinance should have been enlarged so as to include freight trucks, and as to include within its prohibitive clause streets other than those named, were questions resting in the sound discretion of the board of commissioners, which the courts are without power to control. Such questions pertain more particularly to political rather than to judicial functions. But in no view of the variable facts shown do we feel able to hold that the board of commissioners abused their undoubted power and discretion in determining conditions and in limiting the ordinance to the class of persons and to the streets named to meet the conditions found. Relevant to this subject, we will add that the evidence fails to show either the number or the size of the passenger cars operating between Fort Worth and Mineral Wells, and other places, or the running time of the operatives, or the number of persons carried.

So of the freight trucks, the number operating between the cities of Fort Worth and Dallas is not shown, nor is it shown that they ever carry other than dead freight, or that they operate with the same speed. It is to be remembered that the ordinance does not attempt to regulate traffic upon other streets used by other motor lines, which may possibly be done hereafter, should circumstances so dictate, and the present ordinance as to streets named therein is made to apply to all persons alike operating motor busses carrying passengers over the particular streets specified at the ordinance. The ordinance may well be said to have in view the protection of the passengers patronizing the bus lines as well as those operating other autos and vehicles, and in this respect a distinction is to be made between the carriers of passengers and carriers of dead freight. So that, on the whole, we feel unable to say that the board of commissioners of the city of Fort Worth arbitrarily discriminated against appellants in making the classification and limitations manifest by the ordinance in question.

[7] Appellants offered evidence to the effect that in the conduct of their business they had acquired several stations at a specified rental cost in the city of Fort Worth from which they began and terminated their journeys, and from which the ordinance under consideration denies them any approach, and it is insisted that they are accordingly deprived of their property contrary to the guaranties of the Constitution. We are of the opinion, however, that we cannot overrule the conclusion relating to this contention that must be imputed to the trial judge. The ordinance in its purview has no direct relation to the terminal stations referred to. Such stations are in no way condemned, nor are appellants deposed therefrom, nor does the evidence show that their market value has been decreased, nor does the ordinance seek to limit the right of appellants to acquire other suitable terminal stations for the continued conduct of their business along routes hereinafter to be pointed out.

It is apparent that the effect of the ordinance upon the terminal stations is but indirect, and such indirect result can by no means be held to constitute an insuperable obstacle to the right of the city in the protection of its inhabitants to forbid the use of specified congested streets to special classes should the fair judgment of the board of commissioners so determine. This court held, in an opinion by Mr. Justice Buck, in the case of Auto Transit Co. v. City of Fort Worth, 182 S. W. 685, quoting from the headnote:

"That parties operating jitneys or motor busses will suffer a pecuniary injury from the enforcement of an ordinance regulating the operation of such vehicles does not even tend to establish the invalidity of the ordinance."

In the case of New Orleans Gaslight Co. v. Drainage Com. of New Orleans, the Supreme Court of the United States held, in an opinion reported in 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831, that a gas company in the city of New Orleans had no such property rights in the location of its pipes and mains laid under an exclusive franchise to supply gas to the city and its inhabitants, as to make the imposition upon it of the cost of changes in the location of such pipes and mains necessitated by the construction of the municipal drainage system, authorized by an act of the Legislature, a taking of property without due compensation. In a case reported in 15 Tex. Civ. App. 1, 39 S. W. 136, writ refused, the San Antonio Court of Appeals held that the franchise of a street railway company is subordinate to the right conferred on the city by its charter to control the streets, construct sewers, etc; and that the city may, in the honest exercise of its discretion, locate a sewer in the center of a street, so as to suspend the operation of a street railway, without paying compensation for consequent pecuniary loss to the company.

Appellants further, in substance, complain of the ordinance as having the effect of creating a monopoly, in this connection charging, inferentially at least, that the enactment was brought about by fraud and collusion on the part of the officers and agents of the Northern Texas Traction Company and the city government. The allegations were to the effect that the Northern Texas Traction Company operated a line of electric street railway cars between the cities of Dallas and Fort Worth; that they are substantially parallel with the Dallas highway over which appellants operate their cars. The judge of the trial court, however, in his judgment recites that—

"He had given careful and patient hearing to all matters alleged by relators. * * * Likewise to all testimony herein offered, and it is the opinion of the court that there does not exist in this record any matter or thing tending to prove the aforesaid charge of conspiracy, fraud and collusion."

[8, 9] Appellants' verified petition for the injunction was in all of its material allegations specifically denied in a verified answer by the city, and the appellants do not cite us to any testimony which would authorize us to disturb the specific finding of the trial court, which we have above quoted. We must therefore overrule the contention that in its design the ordinance was intended to operate as a monopolistic favor to the Northern Texas Traction Company. In this connection we may also consider the testimony relating to a further contention on the part of appellants that the ordinance had the effect of destroying their business. The prohibitive effect of the ordinance, so far as it relates to East Front street and the Dallas pike within

the city limits, begins at the west line of Main street. West of this line East Front street is open for at least a block, which is bordered by the Terminal Hotel, and before which a number of passenger cars are parked, and from which point there is an open way south across the railroad tracks, and along South Main street some two or three blocks to a street leading east, crossing other railroad tracks and intersecting Boaz street, which connects with Vickery boulevard, extending on through the city to what is known as Polytechnic Heights, from which point a graveled road leads to the village of Handley, some five or six miles from the city of Fort Worth. The distance between the Dallas pike and the road above indicated at no point exceeds a mile and a half or two miles. Indeed, the Dallas pike may be reached from the graveled road by turning due north on a graveled road or street intersecting the Dallas pike at Oakwood stop, a short distance from the east boundary line of the city. The objections to the use of the route from the Terminal Hotel south and in an easterly direction over the graveled road to Polytechnic Heights is that more turns are required; that dust permeates cars and passengers; that the uneven surface causes greater vibrations and injury to the automobiles; and that 15 minutes longer time is required to make the necessary connection between the cities. Giving these objections their full weight, it cannot be said that they impose such burdens and difficulties as will effectually destroy the business of appellants. It is certainly true that burdens of so slight a nature cannot be held to be sufficient under authorities we have hereinbefore cited, to deny the city the power to exclude from its own streets held to be so congested as to necessitate the exclusion. It is held in 6 R. C. L. 267, § 252, that—

"The right of every person to pursue any lawful business, occupation, or profession is subject to the paramount right inherent in every government as a part of its police power to impose such restrictions and regulations as the protection of the public may require; and such restrictions and regulations may be imposed within proper limits without in any way impairing the fundamental right to engage in such occupations."

[10] What has just been quoted also has application, we think, to appellants' further contention that, as was shown in the evidence, they had secured under the state law license to pursue the occupation in which they were engaged, and they cite Vernon's Ann. Civ. St. Supp. 1918, art. 7012½, as inhibiting the imposition of burdens brought about by the ordinance in question. This statute is plainly but a revenue statute providing that fees and certificate registration required by the law shall be in lieu of all other similar registrations, and that no such registration fee or "other like burdens" shall be required of any owner of a motor vehicle or motorcycle by any county, municipality, or subdivision of the state. The statute further provides that the provision should not affect "the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation," etc. We fail to see that the statute has any application.

[11] The answer to the contention that the city is without power to control automobile busses operated for hire elsewhere than in the limits of the city is answered by the ordinance itself. The ordinance on its face purports only to regulate the "operation of motor busses in the city of Fort Worth prohibiting the operation thereof along, across, upon and over city streets in the city of Fort Worth," specifying the particular streets to which the prohibition extends.

Nothing further now occurs to us as necessary to discuss, and it is accordingly ordered that the judgment below be in all things affirmed.