**FLETCHER et al. v. BORDELON et al.**
**No. 2414.**

Court of Civil Appeals of Texas. Beaumont.
Jan. 11, 1933.

Rehearing Denied Jan. 18, 1933.

Orgain, Carroll & Bell, S. M. King, and J. D. Rienstra, all of Beaumont, for appellants.

Jones & Linscome, of Beaumont, for appellees.

O'QUINN, J.

This is an appeal by E. A. Fletcher, mayor of the city of Beaumont, and other city officers, from a judgment of the district court of Jefferson county, Tex., perpetuating and making permanent an injunction against them from enforcing or attempting to enforce the provisions of a certain ordinance passed by the city of Beaumont in regard to the operation of automobiles in the transportation of persons for hire on and over the streets of said city, known as the "Hack and Carriage Ordinance." The enacting clause of said ordinance is as follows: "An Ordinance entitled an ordinance defining hacks and carriages, providing that it shall be necessary to procure a special permit for the operation of same, and the provisions under which a permit may be issued, regulating the operation thereof in the city limits of the City of Beaumont, prohibiting their operation under various conditions, declaring the unrestricted operation of said hacks and carriages to be a nuisance and unlawful, repealing all ordinances and parts of ordinances in conflict herewith insofar as in conflict and no further, and providing a penalty for the unlawful operation thereof."

Appellees, R. J. Bordelon, J. Rizzo, Bennie Salach, E. T. Hyde, and C. B. Payne, Jr., alleged that they had associated themselves together for the purpose of operating a business of carrying passengers for hire in the city of Beaumont, and that their association was known as the "Blue Bird Taxi Association." That in carrying on said business they were using, and would continue to use, vehicles known as automobiles, and that they had expended a large sum of money in equipping said automobiles for the transportation of passengers for hire and had also arranged and equipped a depot or headquarters for the transaction of said business. They further alleged that Carl E. Kennedy, chief of police of the city of Beaumont, was threatening to arrest said appellees for operating their said business in violation of said Hack and Carriage Ordinance, and would do so unless restrained, and prayed for a writ of injunction against the mayor, E. A. Fletcher, Carl E. Kennedy, chief of police, Paul Millard, city manager, Steve King, city attorney, Sam Z. Powell, and George A. Wells, city commissioners, which was granted, and, as above stated, made permanent.

The ordinance is quite lengthy, consisting of some twenty-three sections and covering many pages of the record. We shall not set same out at length, but will refer to such portions as are necessary to be discussed.

The city of Beaumont is now, and has been, since prior to September 11, 1928, operating under the Home Rule Amendment to the Texas Constitution (art. 11, § 5) and the Enabling Act thereto. September 11, 1928, it, passed what is termed a Hack and Carriage Ordinance. June 17, 1932, the ordinance was amended in certain particulars. That is the ordinance in question.

Section 1 of said ordinance reads:

"Section 1. Unless it appears from the context that a different meaning is intended, the following words shall have the meaning attached to them by this Section:

"a. The word street shall mean and include any street, alley, avenue, lane, public place or highway within the city limits of the City of Beaumont.

"b. The word hack is hereby defined to mean, cover and embrace any vehicle for hire for the purpose of transporting passengers upon or over the streets of the City of Beaumont, whether operated wholly within the city or between points outside of the city and points within the city, except vehicles operated upon rails or tracks.

"c. The term carriage is hereby defined to mean, cover, and embrace any vehicle operated for hire for the purpose of transporting goods, wares, merchandise, baggage or freight upon or over the streets of the City of Beaumont, except vehicles operated upon rails or tracks.

"d. The word person includes both singular and plural and shall mean and embrace any person, firm, corporation, association, partnership or society."

Section 2 relates to obtaining a certificate of public convenience and necessity authorizing the operation of vehicles. Subdivision (a) is: "Certificate of Public Convenience and Necessity: No hack or carriage shall hereafter operate within the corporate limits of the City of Beaumont, Texas, without first having obtained from the City Commission of the City of Beaumont, Texas, under the provisions of this Ordinance, a certificate declaring that the public convenience and necessity requiring such operation exists, and without having a license as herein provided." Subdivision (b) provides that such application shall be made to the city commission, and shall furnish certain information to be considered by said commission on hearing. Subdivision (c) provides that the city commission shall determine whether the public convenience and necessity requires the operation of such vehicles and authorized said commission to investigate the fitness of the applicant to operate such vehicles, and in doing so, among other things, to give weight and due regard to (1) the probable permanence and quality of the services offered by the applicant; (2) the financial ability and responsibility of the applicant; (3) the char-

acter of vehicles, and character and location of depots and terminals to be used; (4) the experience of the applicant in the transportation of passengers for hire in automobiles; and (5) the adequacy of the hack service and other forms of transportation for passengers already existing in the city.

Section 3 provides: "(a) Issuance or refusal of certificates. The City Commission shall have the authority to either grant an application for which an application is made, or to grant a certificate to the applicant for a lesser number of vehicles than specified in said application, provided, the City Commission first finds that public convenience and necessity demands the granting of said certificate; if the City Commission finds that public convenience and necessity do not require the operation of any such hack or hacks, or carriages, as is specified in the application, or that the applicant is not fit to conduct such business, it shall forthwith refuse such application and no certificate of convenience and necessity shall be issued to such applicant. The burden shall be upon the applicant to establish the existence of a public convenience and necessity for the operation of hacks or carriages designated in the application."

Subdivision (b) provides for the issuance of the certificate of convenience and necessity, if the necessity therefor is found to exist and the applicant has furnished the information required, and same supports the application.

Subdivision (c) makes the certificate non-transferable without the consent and approval of the city commission, and prescribes the manner of transfer.

Subdivision (d) provides that license to the applicant shall be issued within thirty days after the certificate of convenience and necessity is granted and proof of payment of required license fees. It further provides that no license or renewal of license shall be issued until the holder of the certificate shall show that all taxes levied and assessed by the city against the vehicle, if due, have been paid, and that said vehicle has been rendered to the city assessor and collector for taxation for the current year for which the said license is sought. That any certificate issued shall be effective until canceled, and no additional certificate of public convenience and necessity shall be required for obtaining a license or the renewal of a license so long as the original certificate is in effect, but the owner of the certificate shall be limited strictly to the character and type of operation evidenced by the application and specified in the certificate and license.

Subdivision (e). The license, when issued, shall be good for the remainder of the calendar year and shall be renewed by the holder of the certificate if he desires to operate under same on the 1st day of January, of each succeeding year.

Sudivision (f) provides that no license for the operation of a hack or carriage shall be issued, nor shall any hack or carriage be operated within the limits of the city of Beaumont, until the city commission has issued a certificate of public convenience and necessity for the operation of same, and that no parts of the original ordinance passed September 11, 1928, or as amended June 17, 1932, shall apply to or affect specially chartered busses, sight-seeing busses, driverless cars, or motorbusses owned and operated by any street railway company under authority of the General Laws of the State of Texas.

Subdivision (g) provides that no certificate of public convenience and necessity, as provided for in the ordinance, shall be necessary for the licensing of the same number of hacks or carriages licensed for operation and operated by an application under the same name on June 1, 1932, or for the renewal of licenses for such applicant annually thereafter.

Subdivision (h) provides that the provisions of the ordinance shall apply to all applications for permits to operate hacks and carriages pending at the time of the enactment of the ordinance, as well as to all applications made thereafter.

Section 5 provides: "It shall be unlawful: Subdivision (a). To drive or operate or cause to be driven or operated any hack or carriage upon or along any street in the City of Beaumont unless there is in force and effect a valid permit as prescribed in this ordinance for the operation of such vehicles."

Subdivisions (b), (c), and (d), regulate the manner of operating hacks and carriages.

Under subdivision (e), it is unlawful to operate any hack within the city limits unless and until the owner or operator, or the person to whom the certificate and permit is issued, shall have procured and deposited with the city clerk of the city of Beaumont a good and sufficient bond or public liability an insurance policy such as may be approved by the city manager as to form and efficiency, payable to the city, for the use and benefit of any person or persons entitled thereto, etc.

Appellees alleged, and here contend, that the ordinance in question is unenforceable and void because it undertakes to grant to the city of Beaumont the arbitrary right and authority to refuse applications for permits to operate hacks within the city limits. We do not think this contention can be sustained. The ordinance certainly did not in terms grant such authority, nor do we think it did so in effect. The ordinance plainly provides for the issuance of permits and licenses for the operation of vehicles for the transportation of passengers for hire on and over its streets under certain conditions and

upon the performance of certain requirements. The streets of cities are public highways, and under the primary control of the Legislature. The Home Rule Amendment to the State Constitution, article 11, § 5, and article 1165 (1096a), R. S. 1925, which is the amended Constitution enacted into statutory form, together with article 1175 (1096d), R. S. 1925, a portion of what is known as its Enabling Act, confer upon cities full power of self-government, and delegate to cities operating under the Home Rule Amendment all power the Legislature had to control their streets, and to regulate traffic thereon. In addition to the provisions in the charter, the city could exercise all such authority in the control of its streets and the regulation of the use thereof as is granted by General Law. Article 1175, Vernon's Annotated Statutes, subdivisions 16, 20, and 21, empower the city to do everything it attempted to do by its ordinance.

Subdivision 16 grants the city exclusive dominion, control, and jurisdiction over its streets, and to provide for the improvement thereof.

Subdivision 20 authorizes the city: "To license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or light vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving bond or other security for the operation of the same."

Subdivision 21 gives the city the authority: "To regulate, license and fix the charges * * * made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys of the city."

It is thus seen that under these provisions of General Law, the city was and is empowered to do the very thing and everything it undertook to do by its ordinance here attacked. No one has the inherent right to carry on his private business upon the public streets. It is not only the right, but the imperative duty, of the city to make and enforce such regulations covering the use of its streets, improved at large cost for the benefit of the public, as will be for the convenience and protection of the public. Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6 (writ refused); City of San Antonio v. Fetzer (Tex. Civ. App.) 241 S. W. 1034 (writ refused); Waid v. City of Fort Worth (Tex. Civ. App.) 258 S. W. 1114 (writ refused); West v. City of Waco, 116 Tex. 472, 294 S. W. 832; Peters v. City of San Antonio (Tex. Civ. App.) 195 S. W. 989; Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Ex parte Bogle, 78 Tex. Cr. R. 1, 179 S. W. 1193; Ex parte Schutte, 118 Tex. Cr. R. 182, 42 S.W.(2d) 252; Hadfield v. Lundin, 98 Wash. 657, 168 P. 516, L. R. A. 1918B, 909, Ann. Cas. 1918C, 942; Capitol Taxicab Co. v. Cermak, Mayor, City of Chicago (D. C.) 60 F.(2d) 608. The provisions of the ordinance relative to securing a certificate of convenience and necessity, and the information required to accompany the application therefor, are reasonable and wholesome, required for the intelligent and proper consideration of the commission in determining whether the convenience and necessity of the public required or justified the granting or refusing the certificate, and the discretion lodged in the commission in passing upon same is a proper, wholesome, and constitutional power given for the benefit and safety of the public, and its exercise a duty owed to the public.

Appellees cite us to the cases of City of Arlington v. Lillard, 116 Tex. 446, 294 S. W. 829, and City of Fort Worth v. Lillard, 116 Tex. 509, 294 S. W. 831, as sustaining their contention that the ordinance in question is void and unenforceable because it confers upon the city of Beaumont the arbitrary right and authority to refuse applications for permits to operate automobiles for hire in the transportation of passengers within the city limits. We think each of the cited cases are easily distinguishable on the facts from the instant case. In City of Arlington v. Lillard, the facts were: The city of Arlington is situated between the city of Fort Worth and the city of Dallas. It passed an ordinance prohibiting the use of Abrams and Division streets through the city by those engaged in the operation of motorbusses or motor vehicles for hire, and provided a penalty for its violation. Lillard operated a motorbus line for the carrying of passengers for hire from the city of Fort Worth, through the city of Arlington, to the city of Dallas. Abrams and Division streets were the only streets in the city of Arlington that could be used in going from Fort Worth and other points west of Arlington through to the city of Dallas. Division street was also a portion of the Bankhead state highway. The effect of the ordinance was to prohibit complainants from passing through the city of Arlington, and to prohibit them from using that portion of the state highway. Lillard and others sought and obtained a temporary injunction against the enforcement of the ordinance. The city of Arlington appealed the judgment to the Fort Worth Court of Civil Appeals, which certified questions to the Supreme Court, to which it answered that the city did not have the power, in the exercise of its dominion over its streets, to affect and interfere with the use of a state highway outside of and beyond the city limits by prohibiting the use of two certain streets in the city, one of which was a part of a state highway, and that the city did not have the power to prohibit the use of all of its streets to those carrying passengers for hire. The facts of the instant case are

wholly different from those in the cited case, and neither of the questions involved in that case is involved in the instant case.

In City of Fort Worth v. Lillard, the complainants were carriers of passengers for hire between the cities of Fort Worth and Dallas, and intermediate points, and upon and over the streets of the city of Fort Worth, and sought an injunction against the city of Fort Worth to prevent it from enforcing against them an ordinance purporting to regulate their use, as such carriers, upon the streets of the city. In petitioning for injunction, complainants alleged, among other things, that the city of Fort Worth, at the time it enacted the ordinance, was without power to "enact ordinances"; that the ordinance challenged was not enacted in accordance with charter provisions, and hence void; and that: "Under the guise of enacting a regulatory measure, regulating the character of business therein dealt with, an ordinance and regulation was passed having for its real object and purpose the prohibiting of motor busses operating upon the streets of the City of Fort Worth, and transporting therein passengers, for hire, and thence to, from and between the points hereinabove mentioned; and especially prohibiting the operation of such vehicles between the City of Fort Worth and the City of Dallas; and its purposes and intentions were wholly prohibitory and not regulatory." The district court granted the injunction, and upon appeal to the Fort Worth Court of Civil Appeals (272 S. W. 577) the judgment was affirmed on the ground that the ordinance was not passed in accordance with the city charter provisions. The Supreme Court (294 S. W. 831) granted a writ of error and affirmed the judgment of the Court of Civil Appeals on the ground that the "purpose and effect" of the ordinance was to prohibit the use of the streets of the city for the purpose of carrying passengers for hire. The body of the ordinance is not set out, so we must conclude that the "effect" ascribed to it by the Supreme Court was plainly to be found in its provisions. Not so here. The ordinance here only seeks to regulate the traffic of the nature involved on and over its streets for the convenience, necessity, and protection of the public, making and providing to all who wish to engage in the carrying business a full opportunity and method of procuring the right to do so. The ordinance is in its provisions and effect wholly regulatory. On the same day that the Supreme Court handed down its decisions in the Lillard Cases cited, it also handed down its decision in the case of West v. City of Waco, cited by us supra, written by the same judge, which upholds and is authority for the enactment and enforcement of the ordinance challenged in the instant case.

But appellees insist that the ordinance in question does not and cannot apply to them because the ordinance undertakes to regulate the operation of hacks upon the streets of the city, while they are engaged in the operation of automobiles, which are entirely different vehicles from hacks, and that the word "hacks," when given its usual and ordinary meaning, does not include or mean automobiles. This contention is overruled. Subdivision (b) of section 1 of the ordinance, set out supra, specifically declares the word "hack" used therein to "mean, cover and embrace any vehicle for hire for the purpose of transporting passengers upon or over the streets of the city * * * except vehicles operated upon rails or tracks." As a general rule, in construing statutes words are to be given their usual and ordinary meaning unless it clearly appears that a different meaning was intended. Here the ordinance specifically declares the word "hack" to include "any vehicle" used for the purpose of transporting for hire passengers upon and over the streets of the city. This use of the word "hack" as a general term to include all vehicles used for certain named purposes was authorized and is not ambiguous. Moreover, the ordinance having the effect of a legislative act must be so construed as to effectuate its intent, which was to apply to the very kind of vehicles used by appellees. Furthermore, the ordinance is in consonance with the authority granted the city by subdivisions 20 and 21 of article 1175, Vernon's Annotated Civil Statutes, which specifically authorize the city to license and control the operation of all character of vehicles using the public streets, including automobiles or like vehicles, and to regulate, license, and fix the charges made by any person owning, operating, or controlling "any vehicle of any character used for the carrying of passengers for hire on the public streets of the city." The insistence of appellees that the word "hack" being used, its meaning cannot be extended to include automobiles, is not sound. The rule "expressio unius est exclusio alterius" urged has no application, the ordinance plainly defining it to mean any vehicle used for hire for transporting passengers upon and over the streets of the city, which undoubtedly includes automobiles.

Appellees' contention that the ordinance is void and unenforceable as against them because it operates and is an unjust discrimination against them, in that it excludes vehicles operated upon rails or tracks, is not well taken. There is a marked distinction between vehicles operated upon rails or tracks—street cars and the like—and automobiles as ordinarily used. The first are confined to one specific line of travel and operate on regular schedules, while the second —automobiles—pass upon and over any portion of the street at irregular intervals and to all different points in the city, and at the same time. They do not belong to the same

class of vehicles, and are entirely different in their method and place of operations. In Supreme Lodge United Benev. Ass'n v. Johnson, 98 Tex. 1, 5, 81 S. W. 18, 19, it is said: "It is well settled by the decisions of this court, as well as by the decisions of the Supreme Court of the United States, that the Legislature may classify persons, organizations, and corporations according to their business, and may apply different rules to those which belong, to different classes." This rule obtains in the enactment by the city of the ordinance in question. All persons òr corporations in the class with appellees are treated alike under like conditions, and the ordinance is not open to the objection that it denies to appellees the equal protection of the law. Union Central Life Insurance Co. v. Chowning, 86 Tex. 654, 657, 26 S. W. 982, 24 L. R. A. 504; Auto Transit Co. v. City of Fort Worth (Tex. Civ. App.) 182 S. W. 685; Nolan v. Riechman (D. C.) 225 F. 812; Bradford v. City of Houston (Tex. Civ. App.) 4 S.W.(2d) 592; Waid v. City of Fort Worth (Tex. Civ. App.) 258 S. W. 1114, 1117 (writ refused); Ex parte Sullivan, 77 Tex. Cr. R. 72, 178 S. W. 537; Ex parte Bogle, 78 Tex. Cr. R. 1, 179 S. W. 1193, 1194.

The ordinance provides: "No certificate of public convenience and necessity, as described in this ordinance, shall be necessary for the licensing of the same number of hacks and/or carriages licensed for operation and operated by an applicant under the same name on the first day of June, A. D. 1932, or for the renewal of licenses for the same number of hacks or carriages for such applicant annually thereafter; however, the persons, firms and corporations now operating licensed hacks or carriages in the City of Beaumont shall comply 'and be governed by all other provisions of this ordinance."

■ Appellees say that this provision renders the ordinance void and unenforceable because it is an unjust and unlawful discrimination against them in favor of those who on June 1, 1932, were operating hacks within the city by excepting them from the procuring of license or the renewal of license already held by them. This contention is overruled. The holders of certificates and licenses on June 1, 1932, had already complied with the requirements of procurement of certificate and license, and so had met the requirements and conditions resting upon appellees to operate their automobiles. This provision of the ordinance was but the exercise and application of the well-known principle of proper and reasonable classification, and should not be deemed objectionable as permitting unjust discrimination in violation of the rule against class legislation. The very language of the ordinance shows that the ones excepted had already, under the original ordinance of 1928 and prior to June 1, 1932, applied for and obtained license for op-

erating hacks, and were on said last-named date operating hacks under the license so obtained. Their applications for license had been passed upon and granted. They were in a different class from appellees, in that appellees were for the first time proposing to and were operating hacks or automobiles without a permit, and so not in the same class as the others, nor affected by the same conditions. Ex parte Sepulveda, 108 Tex. Cr. R. 533, 2 S.W.(2d) 445; Railroad Commission of Texas v. Rau (Tex. Civ. App.) 45 S.W.(2d) 413, 416; Gruber v. Commonwealth, 140 Va. 312, 125 S. E. 427. See, also, 6 R. C. L. p. 373, § 369.

■ Nor can the contention that the ordinance is invalid and not enforceable because it exempted from requirements of securing a certificate of public convenience and necessity, and a permit, specially chartered busses and sight-seeing busses, be sustained, as the exemption was based upon an obvious and reasonable classification. Specially chartered busses and sight-seeing busses are very similar in purpose and effect. Their use is very infrequent, covers only particular sections of the vicinity, and the number of busses so used very small, and most frequently are used to visit out of the city places which have some peculiar interest, while appellees' vehicles require constant and unusual use of all the streets in the operation of their business. Alward v. Johnson, 282 U. S. 509, 51 S. Ct. 273, 75 L. Ed. 496, 75 A. L. R. 9.

■ Likewise, the contention that the ordinance was unenforceable and void because it exempted from its provisions motor busses owned and operated by any street railway company under authority of the General Laws of the state is overruled. The exclusion and classification were reasonable under the law and the facts. Moreover, article 6548, R. S. 1925, provides: "Any corporation operating a street or suburban railway or interurban railway, and carrying passengers for hire, is hereby authorized to maintain and operate motor trucks or jitney lines in connection with their said business for the purpose of carrying passengers for hire on the public roads, streets, squares, alleys and highways within the corporate limits of any incorporated city or town under such regulations as may be prescribed by any such city or town, and on the public roads and highways within five miles of the corporate limits of any such incorporated city or town, under such regulations as the commissioners court of such county may prescribe."

It is seen that a street railway company, operating busses in connection with its carrying business, does so under the General Laws of the state. The Legislature having granted permission to operate such busses, the city was not authorized to require a certificate of public convenience and necessity for their operation, although the city could reasonably

regulate the operation of same. Besides, motorbusses so operated have a regular line of travel, fixed charges, and regular schedules. Not so with appellees. These facts clearly distinguish and divide them into different classes, and so their said exemption does not render the ordinance subject to the objection raised.

■ Appellees insist that the ordinance is unenforceable and void because in its caption it declared the unrestricted operation of hacks and carriages to be a nuisance and unlawful, for in that the city was not authorized to declare a thing a nuisance which was not so in fact, and that such operation of automobiles was not a nuisance per se. A sufficient answer to this contention is that no such provision appears in the body of the ordinance, but only in the caption. The office of a caption is to declare the purpose of the act, and if the matter mentioned in the caption is not contained in the body of the act, it is merely surplusage and does not affect the matters set forth in the act itself.

■ Appellees insist that the ordinance is void and unenforceable because subdivision (e) of section 5 declares it to be unlawful to drive or operate any hack on any street in the city unless and until the owner or operator of such hack, or the person in whose name the permit is issued, shall have procured and deposited with the city clerk of the city, for each such hack for which permit is sought, a good and sufficient bond or public liability and insurance policy such as might be approved by the city manager as to form and sufficiency, payable to the city for the use and benefit of any person or persons entitled thereto, etc., because said provision is inconsistent with and in contravention of the Common Law of England, and cites us to the case of Genusa v. City of Houston (Tex. Civ. App.) 10 S.W.(2d) 772, 775, as supporting their contention.

We do not believe the cited case is applicable on the facts. In that case the appellants were engaged in the business of renting driverless automobiles to the public for temporary use on and over the streets of the city. The appellants did not contest the right of the city to regulate their business operations under subdivision 20 of article 1175, R. S. The specific complaint against the city ordinance was that it required them to execute a bond creating a liability against them contrary to the provisions of the Constitution, and a general law enacted by the State Legislature, and for that reason void and unenforceable. The general law mentioned was

article 1, R. S. 1925, which reads: "The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." As was said by Judge Lane in that case: "No rule, perhaps, is better settled than that, under the common law of England, except as liability may be imposed by statute or the owner may have been guilty of personal negligence, as, where he has knowingly intrusted his vehicle to an incompetent driver, such owner is not liable for the damage caused by negligence of one to whom he may hire or loan his vehicle, and to whom he has relinquished control over the vehicle, and who uses it for his own purposes. Under the common-law rule, to impose liability upon the owner for the acts of the hirer or borrower, he must have been acting as the agent or servant of the owner."

Neither the question nor the facts above discussed by Judge Lane is in the instant case. Here the owners were operating their own automobiles—they did not propose to hire the automobiles without drivers, but to the contrary themselves operated their own cars in carrying passengers for hire. The facts do not raise the issue urged. The ordinance in question did not seek to impose upon appellees liabilities in contravention of the common law, but only to regulate their duties under said law. But if it could be said that said ordinance conflicted with said law, the Legislature having given the city of Beaumont the power to control its streets and to license persons doing business thereon for profit, article 1175, subdivision 20, R. S. 1925, it, in effect, repealed the common law as such action is inconsistent with the common law. City of Dallas v. Gill (Tex. Civ. App.) 199 S. W. 1144 (writ refused); Dallas Ry. & Terminal Co. v. Bankston (Tex. Civ. App.) 33 S.W.(2d) 500. A writ of error was granted by the Supreme Court in the last-cited case and the judgment was reversed because of improper argument of counsel. The holding of the Court of Civil Appeals as to the question discussed was approved. (Tex. Com. App.) 51 S.W.(2d) 304.

The city having authority to enact the ordinance, and its provisions and requirements being reasonable and proper, the judgment of the lower court granting and making permanent the injunction should be reversed and the injunction here dissolved, and judgment rendered that said ordinance is in all things valid and enforceable, and it is so ordered.