**DALLAS TAXICAB CO. et al. v. CITY OF DALLAS et al.**

No. 11669.

Court of Civil Appeals of Texas. Dallas.
Jan. 20, 1934.

Rehearing Denied Feb. 24, 1934.

W. H. Reid, of Dallas, for appellants.

Hugh S. Grady, City Attorney, W. Hughes Knight, A. J. Thuss, and H. P. Kucera, all of Dallas, for appellees.

LOONEY, Justice.

The Dallas Taxicab Company, a corporation, and forty-one individuals, instituted this suit against the city of Dallas, its mayor, governing body, chief of police, city attorney, and general manager, alleging in substance that each plaintiff owned, operated, or drove an automobile, carrying passengers for hire within said city; that they each had complied with the state law and obtained license number plate for each automobile owned and operated; that in March, 1932, the city council of said city adopted Ordinance No. 2454, and later certain amendments thereto, regulating the operation and use of automobiles for hire on its public streets, provided for the licensing of chauffeurs and prescribing suitable penalties for its violation.

After the institution of this suit, but prior to the hearing and judgment appealed from, the city council enacted Ordinance No. 2582, superseding and expressly repealing Ordinance No. 2454 and its amendments. These facts were alleged by appellees in support of a motion to dismiss the appeal, on the ground that the questions involved had become moot. The motion was resisted by appellants, their contention being that the regulatory law complained of was not repealed by Ordinance No. 2582, but re-enacted and left substantially as before. We sustained this view and overruled the motion to dismiss. While the new ordinance changed several provisions of the former and added new provisions, yet, the law is essentially the same as before, hence we will treat appellants' objections as having been leveled at the provisions of Ordinance No. 2582, the more recent enactment.

The ordinance provides, among other things, that it shall be unlawful for any person to operate an automobile for hire within the corporate limits of said city, unless and until a license therefor is issued by the city (for which no fee is exacted), that no license shall issue until the owner or person in charge or control of the automobile shall make application therefor in writing and under oath, and until certain other precedent conditions are complied with. The ordinance also makes it unlawful for any person to drive an automobile for hire upon the streets of the city, until such person shall have obtained a chauffeur's license (for which no charge is made), prescribing the proceeding and method of obtaining such license. They further allege that defendants are endeavoring to enforce the provisions of the ordinance, have sought to prevent plaintiffs from operating their automobiles for hire, have

arrested, prosecuted, and convicted some of the plaintiffs in the city courts for alleged violations of the ordinance, and are threatening other arrests; that plaintiffs were compelled to employ counsel for their proper defense, and put to great expense and annoyance; wherefore, they sought injunctive relief, temporary and permanent, enjoining the enforcement or attempted enforcement as against them, of the ordinance, or any of its provisions. The court granted a restraining order, set the matter down, had a hearing on bill and answer, July 31, 1933, dissolved the temporary writ, and denied further injunctive relief, from which plaintiffs appealed.

■ The record discloses that plaintiffs are neither licensees nor applicants for licenses under the ordinance, their contention being that the ordinance as a whole and certain of its provisions, including the conditions precedent to the issuance of license, violate the due process of law clauses of both state and Federal Constitutions (Const. Tex. art. 1, § 19; Const. U. S. Amend. 14), and that having obtained state highway licenses, plaintiffs are entitled to operate their automobiles for hire without being arrested or molested by city authorities, in efforts to enforce the ordinance.

The ordinance requires an applicant for license to apply to the city council, in writing and under oath, stating the ownership and control of the car, its size, capacity, type, horse power, make, etc.; provides that the council may have a hearing, but that no license shall issue unless the council determines, after due investigation, that public convenience and necessity will be subserved thereby; that the applicant shall also furnish for each car licensed a good and sufficient bond or public liability insurance, to be approved by the city manager, for the benefit of those injured in person or property from the operation of the automobile, not exceeding, for personal injury to any one person, $2,500, nor the sum of $5,000, for all persons injured in one accident, and not exceeding $1,000 for direct damage to property from any one accident; permitting the applicant to deposit with the city auditor, in lieu of bond or liability insurance, United States government bonds, in same amount as the bond or liability insurance required; making it unlawful for any person, without an operator's or chauffeur's license, to drive an automobile for hire in the city, requiring applicants for chauffeur's license to reveal his name, age, address, place of employment during the past year, reasons for leaving his former employment, whether or not he has been convicted of a felony, or has a police record, and requiring affidavits of two reputable citizens, attesting applicant's good character. The city manager is authorized to make such investigation as he deems necessary to determine the fitness of applicant for license, and, if license is refused, the applicant may, within ten days, appeal to the city council for a hearing.

In its last analysis, the contention of appellants is that, by reason of having acquired a state highway license, they have a property right to operate automobiles for hire within the city, free from molestation or prosecution by city authorities under the alleged void ordinance.

This contention is in the face of plain statutory provisions to the contrary, and against all case law on the subject. Dallas, a home rule city, clothed with powers conferred upon cities of that class, is authorized, by article 1175, subd. 20, "to license, operate and control the operation of all character of vehicles using the public streets, including motorcycles, automobiles or like vehicles, and to prescribe the speed of the same, the qualification of the operator of the same, and the lighting of the same by night and to provide for the giving bond or other security for the operation of the same," and by subdivision 21, "to regulate, license and fix the charges or fares made by any person owning, operating or controlling any vehicle of any character used for the carrying of passengers for hire or the transportation of freight for hire on the public streets and alleys of the city." Dealing with the registration and numbering of automobiles, under the state highway law, article 6698 provides that "this provision shall not affect the right of incorporated cities and towns to license and regulate the use of motor vehicles for hire in such corporation.".

Thus, we see that cities of the home rule class are clothed with the legislative power to license automobiles or like vehicles used for hire, to control their operation within the cities, to prescribe the speed at which same may be operated, the qualification of operators (chauffeurs), to require automobiles operated at night to be lighted, to regulate fares charged passengers, and require the giving of bond or other security for the benefit of those injured in person or property as the result of said operations.

■ We fail to find any provision of the ordinance not authorized by statute; but it is contended that the ordinance conflicts with

362

provisions found in article 789 to and including article 827 of the Penal Code, in that the ordinance sets up regulations, other and different from those prescribed by statute, and requires the giving of bond or other security, not required by the statute. This criticism is made in general terms, without calling attention to any named provision of the ordinance that conflicts with any identified provision of the Penal Code, and, after due consideration, we are unable to find any such conflict.

 Cases in point announce the doctrine that cities are guardians of the public's right in streets [Dallas Cotton Mills v. Industrial Co. (Tex. Com. App.) 296 S. W. 503, 504], that they hold title for the benefit of the public [Industrial Co. v. Tompkins (Tex. Civ. App.) 27 S.W.(2d) 343], that they have plenary power to control the use of streets [City of Dallas v. Ingram (Tex. Civ. App.) 284 S. W. 345], and may not only regulate, but prohibit the prosecution of private businesses on streets. The right to solicit passengers and convey them for hire from one point to another in a city, as appellants are doing, is a privilege which cannot be exercised as a matter of course, but if it exists at all must be granted by the city. Greene v. City of San Antonio (Tex. Civ. App.) 178 S. W. 6; West v. City of Waco, 116 Tex. 472, 294 S. W. 832; City of Waco v. O'Neal (Tex. Civ. App.) 33 S. W.(2d) 205; Ex parte Schutte, 118 Tex. Cr. R. 182, 42 S.W.(2d) 252; Hodge, etc., v. City of Cincinnati, 284 U. S. 335, 52 S. Ct. 144, 76 L. Ed. 323.

In Fletcher v. Bordelon (Tex. Civ. App.) 56 S.W.(2d) 313, 317 (writ refused), the Beaumont court had under review a city ordinance, in all material respects the same as the ordinance here involved. Among other things, the court said: "No one has the inherent right to carry on his private business upon the public streets. It is not only the right, but the imperative duty, of the city to make and enforce such regulations covering the use of its streets, improved at large cost for the benefit of the public, as will be for the convenience and protection of the public." A clear, accurate, and comprehensive statement of the law in point was made by Judge Smith of the San Antonio court, in City of San Antonio v. Fetzer (Tex. Civ. App.) 241 S. W. 1034, 1035 (writ denied). He said: "The streets of the cities of this country belong to the public. Primarily, every member of the public has the natural right to the free use of such streets in the normal pursuit of his private or personal business or pleasure. In his errands of pleasure, he may use these highways to his heart's content. If he is in the dry goods or grocery business, or operates a laundry, or ice plant, or dairy, or bakery, or is engaged in any other business, he has the right to use the streets in delivering to his customers his dry goods, groceries, laundry, ice, milk, bread, or any other stores or products of his industry, or for any other purpose incident to such business. These rights, being inherent in him as an American citizen, cannot be taken away from him, or unreasonably restricted or regulated. Subject to this freedom of personal conduct inherent in the individual, however, the control of the streets of the cities rests in the Legislature, acting as trustee for the public. The right of the public at large to the free use of the streets is paramount to the natural right of the individual, and the Legislature, in its capacity as trustee, has the power to reasonably regulate this use, to the end that the public shall enjoy the maximum benefits thereof. If in its free use the right of the individual citizen conflicts with the paramount rights of the public at large, then the rights of the one must yield to those of the many. The Legislature may delegate to municipal corporations the control of the streets of such municipalities, and when the power is so delegated the local governing body (the board of city commissioners in the case of the city of San Antonio) may exercise that power to the same extent and for the same purposes as the Legislature could do. * * *"

Further elaborating the subject, Judge Smith quoted from the opinion of the Supreme Court of Appeals of West Virginia, in Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840 (quoted with approval by the Supreme Court of Kansas in Decker v. City of Wichita, 109 Kan. 796, 202 P. 89, a jitney case) as follows: "The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stagecoach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all

the authorities." In the light of these authorities, we have no hesitancy in approving the ordinance in its entirety, as a valid constitutional enactment.

The authority of a city to prescribe the qualifications of operators of automobiles for hire, and require them to be licensed (without charge), before being permitted to engage in such pursuit, is, in our opinion, undoubted. See subdivisions 20 and 23, art. 1175, R. S.; Ball v. City of McKinney (Tex. Civ. App.) 286 S. W. 341; A. B. C. Storage, etc., Co. v. City of Houston (Tex. Civ. App.) 269 S. W. 882; Doeppenschmidt v. City of New Braunfels (Tex. Civ. App.) 289 S. W. 425; Ex parte Schutte, 118 Tex. Cr. R. 182, 42 S. W.(2d) 252.

Also the provision requiring bond or security for the benefit of those damaged in person or property from the operation of automobiles for hire is, we think, wise, just, and valid. See subdivision 20, art. 1175, R. S.; City of Dallas v. Gill (Tex. Civ. App.) 199 S. W. 1144; Genusa v. City of Houston (Tex. Civ. App.) 10 S.W.(2d) 772; Ex parte Schutte, 118 Tex. Cr. R. 182, 42 S.W.(2d) 252; Fletcher v. Bordelon (Tex. Civ. App.) 56 S.W.(2d) 313. The objection that the bond provision is void, because compliance therewith would be so burdensome as to render the business of transporting passengers for hire unprofitable, is without merit. See Ex parte Schutte, 118 Tex. Cr. R. 182, 42 S.W. (2d) 252, and authorities cited. The requirement, that before granting license the city council shall investigate and declare by resolution a public convenience and necessity for the proposed service, is, in our opinion, also a wise and perfectly valid provision. See Fletcher v. Bordelon (Tex. Civ. App.) 56 S.W. (2d) 313; Capitol Taxicab Co. v. Cermak (D. C.) 60 F.(2d) 608.

Section 6 of the ordinance provides that the licensee shall pay all ad valorem taxes against each vehicle due the city, and that failure to discharge this obligation before delinquency operates as a revocation of the license. Appellants contend that this provision is void, because it imposes a burden greater than that imposed by the state for the privilege of operating an automobile. As no case has arisen under this provision nor, in fact, could one have arisen, appellants not being licensees, they are in no position to question the validity of the ordinance in this respect. However, if called upon to adjudicate the question, we would overrule this contention. A similar provision of the Beaumont ordinance was sustained in Fletcher v. Bordelon, supra (writ denied).

It is also contended that the ordinance is discriminatory and void, being class legislation, in that it places a greater burden upon the business pursued by appellants than upon other pursuits. This objection is overruled. The city, in our opinion, was authorized to classify businesses and apply different regulatory measures to different classes. See Fletcher v. Bordelon, supra.

Objections that the city was not authorized to license operators and chauffeurs, and that the ordinance vested the city manager with arbitrary power to deny applications for license, are not well taken. Article 1175, subds. 20 and 23, expressly authorize cities to prescribe the qualifications of operators of cars for hire within the city, to require license therefor, and to regulate operations within the city.

Section 20 of the ordinance (No. 2582) provides that a violation of any of its provisions shall be deemed a misdemeanor punishable by fine, not exceeding $100—each day of a continuing violation constituting a separate offense. Appellants' objection that the penalty provision of the ordinance is in conflict with article 808 of the Penal Code, in that the penalty imposed by ordinance is greater than that imposed by statute, is, in our opinion, not well taken, as the offenses denounced for which penalties are imposed respectively are not the same.

Several other objections are urged, presenting abstract questions, relating to provisions applicable alone to licensees operating under the ordinance; no case is presented under such provisions, nor could one arise, until an attempt be made to enforce the provision against a licensee. One against whom no attempt has been made to enforce a law is not permitted to attack its constitutionality, based upon an apprehension as to what might be done under it; no principle of constitutional law is better settled. Cooley's Const. Lim. (6th Ed.) pp. 196, 197; 12 C. J. pp. 760–764; 6 R. C. L. 89, § 87; Lehon v. City of Atlanta, 242 U. S. 53, 37 S. Ct. 70, 61 L. Ed. 145; Pugh v. Pugh, 25 S. D. 7, 124 N. W. 959, 32 L. R. A. (N. S.) 954; Kentucky, etc., v. City of Louisville, 174 Ky. 142, 192 S. W. 4; Wheeler v. Contoocook Mills, 77 N. H. 551, 94 A. 265; Skrocki v. Stahl, 14 Cal. App. 1, 110 P. 957.

We are of opinion that the court below properly disposed of the case, therefore, affirm its judgment dissolving the temporary writ and denying further injunctive relief.

Affirmed.